## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

**MICHAEL DONALDSON,**

     **Plaintiff,**

           **v.**

**TRAE-FUELS, LLC,** *et al.*

     **Defendants.**

**Case No.: 3:18-cv-00097**

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

In May 2014, Michael Donaldson was diagnosed with inoperable Stage IV Andenocarcinoma pancreatic cancer. Donaldson informed his employers, Defendants Trae-Fuels and EnviroTech, and sought accommodations to undergo treatment. Within three weeks of learning of Donaldson's cancer diagnosis, Trae-Fuels and EnviroTech began secretly documenting false performance concerns and then fired Donaldson without justification on August 20, 2014. The Complaint adequately states a claim for disability discrimination and failure to accommodate under well-settled law and the Defendants' arguments for 12(b)(6) dismissal are without merit for the following reasons:

First, Donaldson is entitled to protection under the ADA because pancreatic cancer, and certainly Stage IV pancreatic cancer, is an actual disability within the meaning of the ADA. The Defendants' argument conflates the ADA's post-2008 definition of disability, which states that impairments are disabilities if they substantially limit (1) an individual's ability to perform major life activities *OR* (2) the operation of an individual's major bodily functions. Stage IV pancreatic cancer substantially impairs the major bodily function of normal cell growth, which is

a major bodily function expressly listed in the ADA. The Defendants' argument that Donaldson did not adequately allege actual disability is easily dismissed.

The Defendants second argument that Donaldson did not adequately allege that they regarded him as disabled fails for similar reasons.  Donaldson does not have to allege that the Defendants perceived that he was limited at work – only that they perceived him to be disabled within the meaning of the ADA.  Donaldson's allegations that Defendants regarded him as having Stage IV pancreatic cancer are sufficient.  And, in any event, Donaldson adequately alleged that Defendants believed he was impaired in his ability to work.  Supervisors made repeated comments about their conceptions of pancreatic cancer and Donaldson's ability to work, began falsely documenting performance concerns to justify his termination, and then terminated him.  The Complaint states a claim for "regarded as" disability discrimination.

Last, the Complaint adequately alleges that the Defendants failed to accommodate Donaldson by terminating his employment without cause rather than continuing to employ him with the reasonable accommodations he had requested.  Terminating an employee rather than continuing to accommodate them is a failure to accommodate.

## FACTS

1.     Plaintiff Michael Donaldson began working as the controller of Defendant Trae-Fuels on October 17, 2013, performing Trae-Fuels's accounting functions and human resources duties.  Trae-Fuels was a start-up heating pellet manufacturer.  Compl. ¶¶ 1, 13-14.

2.     Trae-Fuels's managing member, Defendant EnviroTech, exercised significant control over Donaldson's employment, including his hiring, daily work, and eventually, his firing.  EnviroTech acted as Donaldson's joint employer.  Compl. ¶¶ 92-99.

3.      Donaldson performed his job duties well and received positive feedback from his supervisors at both Trae-Fuels and EnviroTech.   Prior to his cancer diagnosis, neither of Donaldson's supervisors, Trae-Fuels General Manager John Frink and EnviroTech CFO Kevin Whyrick, provided Donaldson any negative written or verbal feedback, reviews, or complaints about his work.   Moreover, Donaldson never received any performance improvement plans or other written complaints about his performance or conduct from anyone else at Trae-Fuels or EnviroTech.   Compl. ¶¶ 29-33, 58-59.

4.      In May 2014, Donaldson was diagnosed with inoperable Adenocarcinoma pancreatic cancer (Stage IV).   Adenocarcinoma pancreatic cancer is the deadlier and more common of the two types of pancreatic cancer.   In 2014, 75% of individuals diagnosed with Adenocarcinoma pancreatic cancer died within one year of diagnosis, with only 6% having a 5-year life expectancy survival rate.   Plaintiff's pancreatic cancer was a physical limitation that substantially limited his major bodily functions regarding his normal cell growth and his digestive functions.   Compl. ¶¶ 37-40.

5.      Trae-Fuels and EnviroTech perceived Plaintiff's pancreatic cancer to be a physical disability.   Following Donaldson's first appointment with an oncologist, he was hospitalized.   While he was out, Trae-Fuels hired a temporary accountant to supposedly assist Donaldson, though the accountant was later released when Donaldson returned to work and did not need help.   Donaldson's Trae-Fuels and EnviroTech supervisors also asked him questions about his cancer, whether he was on the company's insurance, and his ability to work.   Compl. ¶¶ 41-44, 48-49, 50-55.

6.      Within three weeks of Donaldson's cancer diagnosis, Trae-Fuels and EnviroTech attempted to document false concerns with Mr. Donaldson's employment.   On May 27, 2014,

EnviroTech's Director of Human Resources, Beth Aleman, interrogated Donaldson about leaving his company cell phone at the office while on leave.  Aleman's implication that Donaldson had done something wrong was false; he had taken the phone to the office to have it sent for repair and was available on his personal cell phone, which his supervisors had routinely used to contact him.  Aleman also claimed in documents submitted to the EEOC to have documented other performance concerns shortly after learning of Donaldson's cancer diagnosis, though those concerns were not communicated to Donaldson nor was the document provided to him at the time.  Compl. ¶¶ 58-67, 95.

7.     Beginning in July 2014, Donaldson requested an accommodation of missing two out of every three Fridays to undergo chemotherapy at Johns Hopkins.  After Frink spoke with EnviroTech, Trae-Fuels and EnviroTech agreed to permit Donaldson to attend his chemotherapy and Donaldson agreed to maintain a forty-hour workweek.  Donaldson handled chemotherapy well and was able to work forty to forty-five hours per week.  Compl. ¶¶ 76-82.

8.     However, about six weeks later, Trae-Fuels and EnviroTech terminated Donaldson without justification and without explanation other than Frink's vague claim that Donaldson did not fit into the corporate culture, which Frink had not expressed before. Donaldson's sudden termination contrasted with Trae-Fuels and Envirotech's treatment of other employees, who were provided performance or disciplinary write-ups and an opportunity to correct perceived deficiencies prior to termination.  Compl. ¶¶ 83-91.

## STANDARD OF REVIEW

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable

factual inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). When a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of the allegations set forth in the complaint and the "documents attached to or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2013).[1]

## ARGUMENT

The Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 (the "ADAAA"), prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To establish a prima facie case of disability discrimination, a plaintiff must show that (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was not otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action which "occurred under circumstances that raise a reasonable inference of unlawful discrimination." *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995).

Defendants do not contest that the Complaint adequately alleges they are subject to the ADA, that Donaldson was otherwise qualified to perform his essential job functions, or that Donaldson suffered an adverse employment action under circumstances that raise a reasonable

---

[1] The Court should not consider the Defendants' extrinsic assertion that they terminated Donaldson for poor performance at the 12(b)(6) stage as that argument is not based on the facts alleged in the Complaint but is merely what the Defendants' hope to prove.  In fact, the Defendants were unable to provide sufficient evidence of a non-discriminatory justification to avoid the EEOC finding reasonable cause that they violated the ADA.

inference of unlawful discrimination.  Instead, the Defendants argue that Donaldson was not disabled or regarded as disabled within the meaning of the ADA and that they did not fail to accommodate him.  These arguments are wrong.[2]

First, the Complaint properly alleges that Stage IV pancreatic cancer is an actual disability within the meaning of the ADA.  Defendants' contrary contention does not accord with the plain language of the ADA's definition of disability.  Second, the Complaint appropriately alleges that Defendants' regarded Donaldson as having a disability, Stage IV pancreatic cancer, and also regarded Donaldson as being substantially impaired in his ability to work.  Last, the Complaint states a claim for failure to accommodate because terminating an employee rather than continuing to provide reasonable accommodations is a failure to accommodate.

## I.  The Complaint Plausibly Alleges that Plaintiff had an Actual Disability within the Meaning of the ADA.

The plain language of the ADA, the legislative history of the ADA Amendments Act of 2008, and implementing regulations conclusively establish that Stage IV pancreatic cancer is an actual disability within the meaning of the ADA.  Thus, the Defendants' argument that even if they discriminated against Donaldson because of his cancer, they did not violate the ADA because his Stage IV pancreatic cancer did not limit his ability to work, is incorrect.

A. *The plain language of the ADA provides that a substantial impairment to a major bodily function, including normal cell growth, is an actual disability under the ADA even if that impairment does not also limit another major life activity.*

Since 2008, the ADA has defined "disability," with respect to an individual as:

"(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

---

[2] Donaldson addresses these contentions in the typical order courts analyze them rather than to correlate with Defendants' motion, starting with whether he is a covered individual under the ADA.

(B)  a record of such an impairment; or

(C)  being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1). "Major life activities," are defined as:

(A)  In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B)  Major bodily functions. For purposes of paragraph (1), **a major life activity also includes the operation of a major bodily function**, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102(2) (emphasis added).

Accordingly, there are two separate ways in which an impairment can substantially limit a "major life activity," and qualify as an actual disability under the ADA: either (1) the impairment can substantially limit an individual's ability to perform major activities like walking or working; or (2) the impairment can substantially limit the operation of an individual's major bodily functions like the functions of the immune system or normal cell growth. *Id.* The plain language of this definition does not require that an impairment that substantially limits the operation of a major bodily function also substantially limit the performance of an activity to be an actual disability.

Defendants' contrary argument reflects a misreading of the ADA's definition of actual disability. Donaldson is not required to allege that his cancer both limited his ability to work or perform some other activity and also substantially limited a major bodily function. Instead, Donaldson's allegations that his pancreatic cancer was a substantial limitation on his bodily functions of normal cell growth and normal digestive functions are sufficient. Donaldson further alleged just how limiting the type of inoperable pancreatic cancer he had was in that it regularly

kills within a short time frame.   Donaldson is not required to plead the scientific specifics of how pancreatic cancer changes normal cell growth and then kills those afflicted with it.  *Patton v. Shulkin*, Civil Action No. 7:16-cv-00250, 2018 U.S. Dist. LEXIS 41539, at *18 (W.D. Va. Mar. 14, 2018) (citing 29 C.F.R. § 1630.2(j)(1)(v) stating that determining whether an individual is substantially limited in a major life function "usually will not require scientific, medical, or statistical analysis.").  Taking the facts as true and drawing reasonable inferences in favor of Donaldson, the Complaint sufficiently alleges that typically deadly and inoperable Stage IV cancer is an actual disability.

> B. *The legislative history of the ADAAA and implementing regulations confirm that pancreatic cancer is an actual disability under the ADA.*

The legislative history of the ADAAA confirms that the Complaint adequately alleges that Stage IV pancreatic cancer is an actual disability.  The ADAAA was signed into law by President George W. Bush on September 25, 2008, with a statutory effective date of January 1, 2009. Pub. L. No. 110-325, 122 Stat 3553. Passed in response to decisions by the U.S. Supreme Court that, according to Congress, had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA," the ADAAA sought to reinstate "a broad scope of protection . . . available under the ADA." *Id*. at 3554.

The primary way in which Congress chose to broaden the scope of ADA coverage was to expand the law's definition of the term disability. Congress' stated purpose in expanding the definition of disability was to "convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* This is because "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations." *Id.*

While the ADAAA retained the three-prong definition of disability, it significantly expanded the meaning of terms included in that definition. Thus, the Act expanded the meaning of terms under the actual disability prong, which, as stated previously, defines a person with a disability as one who has an actual "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). For purposes of this case, the most significant changes to the ADA are as follows:

(1) The ADA now states that "[t]he definition of 'disability' [under the Act] shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms [of the Act]." 42 U.S.C. § 12102(4)(A).

(2) The definition of "major life activities" under the Act's actual disability prong was expanded to include the operation of "major bodily functions." 42 U.S.C. § 12102(2)(B). The Act now includes a sample list of major bodily functions that constitute a major life activity; this list includes "normal cell growth." *Id.*

(3) The Act emphasizes that the term "substantially limit" under the actual disability prong shall be interpreted as broadly as possible. 42 U.S.C. §12102(4)(A) & (B).

(4) As explained above, the Act now clarifies that as long as an impairment substantially limits one major life activity, such as normal cell growth, it need not limit other major life activities, such as working, in order to be considered a disability. 42 U.S.C. §12102(4)(C).

This legislative history is bolstered by the EEOC's final regulations implementing the amendments, which provide a list of impairments that, because they substantially limit a major life activity, will "in virtually all cases, result in a determination of coverage under [the actual disability prong]." 29 C.F.R. § 1630.2(j)(3)(ii) (effective May 24, 2011).  One of the impairments listed is "cancer" because it "substantially limits [the major life activity] of normal cell growth."

*Id.* at § 1630.2(j)(3)(iii). *See also* the EEOC's interpretive guidance accompanying its final regulations, 76 FR 16978-01, 2011 WL 1060575, at **17007, 17011, & 17012 (citing examples in the legislative history of the ADAAA where Congress named cancer as the kind of impairment that would qualify as a disability under the amended Act).

      *C.   The cases Defendants' cite are inapplicable.*

      Defendants' reliance on cases in which employees claimed their limited major life activity was their ability to work is misplaced.  In *Signore v. Bank of Am., N.A.*, the court found the employee was not disabled because the employee was not substantially limited in her major life activity of working.  2013 U.S. Dist. LEXIS 145649 at *20-22 (E.D. Va. Oct. 7, 2013).  That employee did not have currently have cancer, however, and thus the court did not analyze the limitation on her bodily functions.  *Id.*  In *Boitnott v. Corning Inc.*, 669 F.3d 172, the Fourth Circuit determined that an individual with leukemia and heart problems was not substantially limited in his ability to work.  669 F.3d 172, 176 (2012).  However, that case was under the pre-2008 ADA and therefore did not consider the operation of major bodily functions as a potential disability.  *Id.* at 176-77.

      Similarly, Defendants' citation to cases in which less-serious conditions were not found to be actual disabilities is also unpersuasive.  In *Cash v. Magic City Motor Corp.*, the court found that the employee inadequately alleged that ulcers and anemia were an actual disability or that they substantially limited the employee's ability to perform the major life activities of working or caring for himself.  2017 U.S. Dist. LEXIS 8128 *7-10.  Ulcers and anemia are not Stage IV pancreatic cancer.  Like the *Croy v. Blue Ridge Bread, Inc.* case involving an employee with HIV that the *Cash* court distinguished, Donaldson's allegations of serious and deadly cancer

sufficiently allege a limitation to his major bodily functions.  *Id.* at 10 (discussing *Croy,* 2013 U.S. Dist. LEXIS 98734 (W.D. Va. July 15, 2013).

Likewise, in *Miller v. Md. Dep't of Natural Res.*, the employee's allegations that he had herniated discs but not that his condition limited a major bodily function were insufficient to allege a disability.    2018 U.S. Dist. LEXIS 165863 * 18-19.  The court denied the employee leave to amend the complaint because it found that he could not adequately allege that the functioning of his neurological system was substantially limited.  *Id.* at 24-26.  In this case, though, Donaldson has directly and specifically alleged that his pancreatic cancer substantially limited his normal cell growth, a major bodily function expressly listed in the ADA.

In sum, the plain language of the ADA, the legislative history of the 2008 ADAAA, and the ADAAA's implementing regulations establish that serious cancer is an actual disability within the meaning of the ADA.  The Complaint's allegations that Donaldson had inoperable, Stage IV cancer that is routinely deadly are sufficient to allege actual disability.

## II.      The Complaint Plausibly Alleges Defendants Regarded Plaintiff As Disabled

Separately, the Complaint plausibly alleges ADA coverage under a "regarded as" theory. The ADA prohibits discrimination based on the employer regarding the employee to be disabled even if the employee is not actually disabled.   42 U.S.C. § 12102(1).  An employee is regarded as disabled if the employer perceives the employee to have a physical or mental impairment that substantially limits one or more major life activities of the employee.  *Id.*  As with the analysis of actual disability, "major life activities," include the operation of major bodily functions.   42 U.S.C. § 12102(2).  Section 12102(3) provides:

"(A)  An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or

11

mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B)  Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less."

42 U.S.C. § 12102(3).

As with the actual disability determination, the Defendants' argument misapplies the definition of disability to require a substantial limitation of the ability to work.  However, Donaldson's allegations that Defendants regarded him as being substantially limited in the operation of a major bodily function are sufficient.  Donaldson repeatedly alleged that his supervisors were aware that he had pancreatic cancer.  It is reasonable to infer that Defendants perceived that Donaldson's bodily functions of normal cell growth and the operation of his digestive system were substantially limited by a commonly deadly cancer.

Further, even applying pre-2008 case law requiring a limitation on activities beyond major bodily functions, the Complaint sufficiently alleges that Defendants regarded Donaldson as disabled.  Donaldson alleges that he was hospitalized for several days after his diagnosis and that while he was out, Defendants hired a temporary accountant.  While the accountant was later let go, Defendants questioned Donaldson about his health, asked if he would begin to work part-time, stated that relatives had died from pancreatic cancer, asked if he was on the company's insurance, and asked about his cancer's growth rate.  Further, Defendants began falsely documenting performance problems and then terminated Donaldson without justification.  Taking the facts alleged as true and drawing reasonable inferences in favor of Donaldson, as the Court must at the 12(b)(6) stage, the Complaint also adequately alleges that Defendants regarded Donaldson as being substantially limited in his ability to work.

### III.   The Complaint States a Claim for Failure to Accommodate

Last, the Complaint also states a claim that Defendants' termination of Donaldson six weeks into his chemotherapy treatment that required him to miss two out of every three Fridays was a failure to accommodate in violation of the ADA.   In order for a plaintiff to establish a failure to accommodate under the ADA, the plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations."   *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

As explained above, Donaldson was an individual with a disability within the meaning of the ADA and Defendants were on notice of his pancreatic cancer.   Defendants do not dispute that Donaldson appropriately alleged that he could perform the essential functions of his job with accommodation.    Rather, the Defendants argue that Donaldson did not request an accommodation and that, in any event, they granted him the Friday leave he requested.   Def. Mot. to Dismiss, pp. 5-7.

To start, the Complaint clearly alleged that Donaldson requested a modified schedule to allow him to miss work to undergo chemotherapy two out of every three Fridays at Johns Hopkins.   Compl.   ¶¶ 76-80.   In fact, the Complaint alleges that after Frink discussed with EnviroTech, Defendants agreed to allow Donaldson to work his modified schedule and Donaldson agreed to continue to maintain a forty-hour week.   Compl. ¶¶ 78-80.   A request for a modified work schedule can be a request for reasonable accommodation.   *See, e.g. Myers v. Hose*, 50 F.3d 278, 282, n. 2 (4th Cir. 1995) (noting that a modified schedule is an example of a

13

reasonable accommodations listed in the ADA); *see also* 42 U.S.C. § 12111(9)(B) ("[t]he term 'reasonable accommodation' may include--… part-time or modified work schedules . . . .").

The Complaint also adequately alleges that Defendants failed to accommodate Donaldson by terminating his employment about six weeks after he requested accommodations.  Although courts in the Fourth Circuit have not explicitly addressed whether a termination can be a failure to accommodate, authority from courts in other Circuit Courts of Appeals has held that firing an employee rather than continuing to employ and accommodate them constitutes a refusal to accommodate.  *EEOC v. Orion Energy Sys.*, No. 14-CV-619, 2015 U.S. Dist. LEXIS 86428, at *10-11 (E.D. Wis. July 2, 2015) (holding that terminating an employee rather than retaining him and providing an accommodation "would constitute both a failure to accommodate and wrongful discrimination . . . ."); *see also Sisters of the Third Order of St. Francis*, 164 F. Supp. 3d 1083, 1086 (C.D. Ill. 2016) (holding that terminating an employee before the employee was transferred to a location in which the employee would need a reasonable accommodation constituted a failure to accommodate).

This case law accords with common sense.  If Donaldson can show that Defendants fired him because they did not want to continue to accommodate him, as he has alleged, his termination should constitute a failure to accommodate in violation of the ADA.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss, or in the alternative, deny dismissal with prejudice.

Respectfully submitted,

MICHAEL DONALDSON

By:    /s/ _____

14

Jack Jarrett (VSB #86176)
Alan Lescht and Associates, P.C,
1825 K St., NW, Ste. 750
Washington, D.C. 20006
(202) 463-6036 (phone)
(202) 463-6067 (fax)
jack.jarrett@leschtlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 12, 2018, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send a notification of such filing to each counsel of record in this matter.

/s/
_____
Jack Jarrett (VSB #86176)
*Counsel for Plaintiff*

15