IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |  |
|---|---|---|
| **MICHAEL DONALDSON,** | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: 3:18CV00097 |
| **TRAE FUELS, LLC., et al.** | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT**

**I.     Introduction**

Mr. Donaldson argues that a cancer diagnosis automatically classifies him as "disabled" under the ADA.  This is incorrect.  Neither the plain language of the statute itself, nor any federal court construing the ADA create such a classification.  The factual allegations in the Complaint demonstrate that Mr. Donaldson did not suffer a physical or mental "***impairment***" that imposed a "***substantial***" limitation on ***his*** major life activities.  The Complaint does not set forth any individualized allegations that would plausibly support a conclusion that Mr. Donaldson was disabled under the ADA.

Further, his Complaint also shows that the Company fired Mr. Donaldson's temporary assistant, assigned Mr. Donaldson more responsibilities, and accepted his "plan" to work more than 40 hours per week after his cancer diagnosis and during his chemotherapy. The Company's actions alleged in the Complaint are completely inconsistent with the legal conclusion that it "perceived" Mr. Donaldson as disabled.

Finally, there is no statutory or caselaw support for Mr. Donaldson's counterintuitive claim that the Company's termination of his employment constitutes a refusal to "accommodate" him, when the face of the Complaint shows that the Company actually granted the only request he made (a modified schedule) related to his medical condition.

Mr. Donaldson's Complaint should be dismissed without leave to amend.

## II.   The ADA Creates No "Per Se" Categories of Disability and Mr. Donaldson's Complaint Shows That He Was Not "Impaired" Nor Did His Condition Impose a "Substantial" Limitation Upon Him

Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). The law is clear that this inquiry is an individualized one: "Disability means, ***with respect to an individual***. 29 C.F.R. § 1630.2(g)(1) (emphasis added). Implementing regulations also make two important points clear regarding construction of the term "substantially limits:" First, not every impairment will constitute a disability within the meaning of this section; and,

Second, a claimant must allege a degree of "functional limitation" as a result of their impairment. 29 C.F.R. § 1630.2(j)(ii),(iv).

Mr. Donaldson spends five pages reciting the statute and EEOC regulations. Opposition at 6-10. This recitation is not inaccurate, but its focus on "normal cell growth" as a major life activity simply misses the point. A cancer diagnosis in and of itself is not designated as a disability under the ADA, either before or after the 2008 amendments. Congress could have easily made such a determination, but it did not. What the Court is faced with in this case is a cancer diagnosis that is essentially asymptomatic – Mr. Donaldson has not alleged that there is any element of his condition that rendered him physically or mentally "impaired" let alone that he suffered an impairment that was "substantial." He claims just the opposite – that he was not impaired in any way. In the "actual disability" section of his Opposition (pp. 6-11), Mr. Donaldson does not cite one case that confers disability status on a *per se* basis to a person diagnosed with cancer.

The courts addressing the question of *per se* classifications have rejected the concept. In 2017, the Third Circuit affirmed a district court decision finding that a cancer patient was not disabled under the 2008 amendments to the ADA. *Alston v. Park Pleasant, Inc.,* 679 Fed. Appx. 169, 2017 U.S. App. LEXIS 2668 (3d. Cir. 2017).[1] The Third Circuit found that the plaintiff had alleged no impairment of "her work, her ability to drive, or her ability to take care of herself or her household." 2017 U.S. App. LEXIS 2668 at **7.

---

[1] The Third Circuit issued the *Alston* opinion as "non-precedential" under IOP 5.7. The ruling and analysis is persuasive, but would not be binding upon a Fourth Circuit situated court in any event.

Page 3 of 11

> We agree that cancer can—and generally will—be a qualifying disability under the *ADA*. Nevertheless, "[t]he determination of whether an impairment substantially limits a major life activity requires an individualized assessment." *29 C.F.R. § 1630.2(j)(1)(iv)*. Although the ADAAA makes the individualized assessment "particularly simple and straightforward" for diseases like cancer, *29 C.F.R. § 1630.2(j)(3)(ii)*, an individualized assessment must still take place. To undertake that individualized assessment, courts have required some evidence of the plaintiff's substantial limitation-even when the limitation seems self-evident in context.

*Id.* at \*\*6.  The *Alston* decision stands for the proposition that Congress came close to classifying cancer as a *per se* disability in amending the ADA in 2008, because all forms of cancer do affect "normal cell growth" in some way.  But, Congress did not go all the way to *per se* classification and it could not have done so because it would have then discarded the meaning of the terms "substantial" and "impairment" in the statute.  Claimants must still make an "individualized" showing of an actual "substantial" real-life tangible "impairment."  Reciting the statutory mantra of effects on "normal cell growth" is not enough.  And it is clearly not enough in this case when every other part of Mr. Donaldson's Complaint alleges that he is A-Okay and can work a forty to forty-five hour week and travel to Utah to adopt a child and take on more job responsibilities. *See* Complaint at ¶ ¶ 45-49, 79-82, 89.

Courts in the Fourth Circuit have come to the same conclusion.  They do not make *per se* classifications; they require at least some allegation of significant individualized real-world effects from the cancer diagnosis.  In *Jeffries v. Wal-Mart Stores E., LP,* 2016 U.S. Dist. LEXIS 95051, \*8 (D. Md. 2016), *affd. sub nom. Jeffries v. Wal-Mart Stores E., L.P.,* No. 16-1900, 669 Fed. Appx. 634, 2016 U.S. App. LEXIS 18601, (4th Cir. Oct. 17, 2016), the District Court found that a breast

cancer patient was "disabled" under the ADA. But, the conclusion was only reached after the court identified an allegation of real-world effects: "Plaintiff alleged that 'her immune system became extremely fragile ***which required her to stay off from work***.' ECF No. 22 at 5. Thus, Plaintiff's breast cancer qualifies as a disability under the ADA." *Id.* (emphasis added). *See also Mathews v. TCI Construction,* 2018 U.S. Dist. LEXIS 57534 *10-11 ("even when a plaintiff alleges that they have cancer, a court must still undertake an individualized assessment of how the plaintiff is substantially limited in a major life activity by the alleged impairment. . . . This interpretation is supported by the Supreme Court, which requires individuals alleging a disability to characterize 'the extent of the [substantial] limitation in terms of their own experience,' even when the impairment would ordinarily satisfy the statutory definition of a disability. *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S. Ct. 2162, 144 L. Ed. 2d 518 (1999).")

The only new case that Mr. Donaldson cites in his Opposition is Judge Dillon's decision in this District: *Patton v. Shulkin.* Mr. Donaldson cites the case for the proposition that a claimant is not required to offer medical analysis to support a disability claim. A reading of Judge Dillon's opinion, however, indicates that a plaintiff must demonstrate some degree of actual and individualized real-life "impairment:"

> [T]he court concludes that Patton has offered sufficient evidence to create a genuine dispute of material fact as to whether her impairments substantially limit one or more major life activities. Two of her diagnosed impairments—major depressive disorder and PTSD—are included in the regulations' list of impairments that "should easily be concluded" to substantially limit brain function. *Id.* § 1630.2(j)(3)(iii). ***Moreover, during her deposition, Patton***

> *provided detailed examples of how her mental and intestinal impairments affected her ability to work.* For instance, Patton testified that her major depressive disorder and PTSD caused her to experience an uncontrollable urge to cry, made it difficult for her to focus, and negatively affected her ability to interact with others. Patton further testified that her intestinal disorder resulted in the sudden need for bowel activity and that she experienced bouts of diarrhea at work that were so severe that she could actually end up soiling herself if she were not close enough to a restroom. In light of such evidence, the court concludes that a reasonable jury could easily find that Patton's mental and intestinal impairments substantially limit one or more major life activities and are therefore disabling for purposes of the ADA and the Rehabilitation Act.

*Patton v. Shulkin,* 2018 U.S. Dist. LEXIS 41539, *18-20 (W.D. Va. 2018).

Analyzing the above passage from *Patton* demonstrates what is obvious from the face of the statute – there must be an allegation of an actual "impairment" and the alleged impairment must be "substantial." Had the question been answered to the satisfaction of Judge Dillon based on Ms. Patton's diagnosis of "major depressive disorder and PTSD," the court's analysis would have been complete. But, the court properly continued on to analyze the question of whether the depression and PTSD actually could support a conclusion of an "impairment" that was "substantial" specifically as to the Plaintiff, Ms. Patton. The only practical way to do this, as every court has done, is to gauge the potential effect of the alleged disability on Ms. Patton's ability to live and work "compared to most people in the general population." *Id.* at *18. The long list of actual effects (crying at work, lack of focus, inability to work with others, and uncontrollable diarrhea) cemented the correct conclusion that Ms. Patton was in fact disabled under the statute.

Conversely, Mr. Donaldson "experienced no negative symptoms [from his cancer treatment] . . . and was able to maintain a forty to forty-five-hour work week

. . . ." Complaint at ¶ 82. Because Mr. Donaldson alleges no restriction or impairment of any kind, in "comparison to most people in the general population" or otherwise, either in our outside the workplace, he has not alleged an impairment, let alone one that is substantial.

One final look at Mr. Donaldson's allegations regarding the cancer reveals that they are all generic allegations that do not remotely touch the concept of "individualized assessment" as required by the U.S. Supreme Court in *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555 (1999):

- ¶ 37 identifies the type of cancer as "Adenocarcinoma pancreatic;"

- ¶ 38 characterizes this type of cancer as the "deadlier of the two" common types of pancreatic cancer;

- ¶ 39 provides a generic summary of cancer survival rates;

- ¶ 40 parrots the statute by stating that the cancer "was a physical limitation that substantially limited his major bodily functions regarding his normal cell growth and his digestive functions;"

So, Mr. Donaldson uses the term "physical limitation" in ¶ 40, but what was the physical limitation? It clearly did not limit his travel, his work, and it did not cause him pain, nausea or vomiting. Complaint at ¶ 82. There are no other suggestions of limitations on his "digestive functions" anywhere in the Complaint. Thus, in the entire 116 paragraph Complaint there is not one single allegation touching upon Mr. Donaldson's own individualized experience with cancer and how it acted as an "impairment" that was both "substantial" and affected a "major life function." As such, he cannot be classified as actually "disabled" under the ADA.

Finally, Mr. Donaldson claims that the Company "perceived" his cancer as a "physical disability." Opposition at 5, 11-12. But there is no support for this contention in the actual Complaint either. As Plaintiff points out, the temporary accountant was "released when Donaldson returned to work and did not need help." Opposition at 3. So, the factual statement is directly ***contrary*** to the legal conclusion drawn by counsel. The Company could not have perceived him to be disabled if it dismissed Mr. Donaldson's assistant because he did not need the help. The Complaint would survive a motion to dismiss if Plaintiff had pled the exact ***opposite***: e.g., "the Company continued to retain Mr. Donaldson's assistant because it perceived that he could not perform the job he was assigned." But that is not what the Complaint says, and that is not what happened.

Mr. Donaldson concludes this section of his Opposition by writing "Further, Defendants began falsely documenting performance problems and then terminated Donaldson without justification." Opposition at 12. But this is a non-sequitur and has no bearing on whether the Company perceived him as disabled. The facts from the Complaint show that Mr. Donaldson did not perceive himself to be disabled and the Company agreed with him.

### III. There is No Support for Mr. Donaldson's Claim that Termination of Employment Alone is a Denial of a Reasonable Accommodation

Element number four of the reasonable accommodation test requires the Employer to "refuse" to make an accommodation for the employee. *Wilson v. Dollar General Corp.,* 717 F.3d 337, 345 (4th Cir. 2013). Mr. Donaldson's Complaint flunks this test.

Mr. Donaldson argues in his Opposition that he "requested a modified schedule." Opposition at 13. He then writes "Defendants agreed to allow Donaldson to work his modified schedule and Donaldson agreed to continue to maintain a forty-hour week." *Id.* Thus, Mr. Donaldson defeats his own argument by expressly admitting that element number 4 has not been met.

Mr. Donaldson candidly admits there is no Fourth Circuit authority supporting the proposition that a termination, standing alone, is a denial of reasonable accommodation. But Mr. Donaldson overstates the authority from other jurisdictions, characterizing a district court decision from the Eastern District of Wisconsin as "Circuit Court of Appeals" authority. Opposition at 14. The case, *EEOC v. Orion Energy Sys.,* 2015 U.S. Dist. LEXIS 86428 (E.D. Wisc. 2015), does not support Mr. Donaldson in any event. In that case, a wheelchair-bound employee requested that automatic door openers be installed to accommodate his disability. The employer denied this request, and shortly thereafter terminated the employee. *Id.* The employer's **_denial_** of the requested accommodation allowed the claim to proceed past summary judgment.

Mr. Donaldson's final authority also demonstrates that the **_denial_** of a request for accommodation is an absolute necessity in maintaining a claim for **_denial_** of reasonable accommodation. In *Meyer v. St. John's Hospital of the Hosp. Sisters of the Third Order of St. Francis,* 164 F. Supp. 3d 1083 (C.D. Ill. 2016) (cited in Opposition at 14), another wheelchair-bound employee was assigned by her supervisor to a new office that would be too small to accommodate her wheelchair.

The employee "asked to continue to work from both the floor and her office like she had done for the past four years." *Id.* at 1084.  The employer did not grant this request, and thereafter terminated the employee "just days after" her request for accommodation. *Id.*  Again, the denial of the accommodation is the lynchpin of the claim.  The *Meyer* case does not support the conclusion that a termination alone, absent a request and a denial of an accommodation by the employer, can ever state a cause of action for denial of reasonable accommodation.

## IV.   Conclusion

Based on the facts pled by Mr. Donaldson in his Complaint, neither his termination or reasonable accommodation claim can survive.  Further, the Court should not grant Mr. Donaldson leave to amend.  He did not inadvertently fail to plead sufficient or necessary facts.  He affirmatively pled facts which bar his claim: (1) he "experienced no negative symptoms," and (2) the Company granted his request to work a modified schedule.  The motion to dismiss should be granted.

 Dated: December 19, 2018.

                                          Respectfully submitted,

                                          /s/ Jackson S. Nichols
                                          _____
                                          Jackson S. Nichols, Esq.
                                          (VSB # 87225)
                                          Cohen Seglias Greenhall Pallas & Furman PC
                                          1828 L. Street, N.W.
                                          Suite 705
                                          Washington, D.C.  20036
                                          (202) 466-4110
                                          JNichols@CohenSeglias.com

--and—

/s/ Lars H. Liebeler

_____

Lars H. Liebeler, Esq. *(admitted pro hac vice)*
Lars Liebeler PC
1828 L. Street, N.W.
Suite 705
Washington, D.C. 20036
(202) 587-4747
LLiebeler@LHL-LawFirm.com

## CERTIFICATE OF SERVICE

This is to certify that I have on this day, December 19, 2018, served all the parties in this case with this **Reply Brief in Support of Motion to Dismiss** in accordance with the notice of electronic filing ("ECF"), which was generated as a result of electronic filing in this court.

/s/ Lars H. Liebeler

_____
Lars H. Liebeler, Esq.