CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 21 2019

JULIA C. DUDLEY, CLERK
BY: /s/ 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

MICHAEL DONALDSON, )
)
    Plaintiff, ) Civil Action No. 3:18CV00097
)
v. ) **MEMORANDUM OPINION**
)
TRAE-FUELS, LLC, et al., ) By: Hon. Glen E. Conrad
) Senior United States District Judge
    Defendants. )

Michael Donaldson filed this action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, against Trae-Fuels, LLC ("Trae-Fuels") and EnviroTech Services, Inc. ("EnviroTech"). The defendants have moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court will deny the defendants' motion.

## Background

The following factual allegations, taken from the plaintiff's complaint, are accepted as true for purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 924 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

On October 17, 2013, Donaldson began working as the financial controller of Trae-Fuels, a limited liability company in Bumpass, Virginia that manufacturers heating pellets. Compl. ¶¶ 13, 15, Dkt. No. 1. Donaldson reported directly to John Frink, the general manager of Trae-Fuels, and Kevin Whyrick, the chief financial officer of EnviroTech, Trae-Fuel's managing member. Id. ¶¶ 17, 30–31. Chris LaRocco, EnviroTech's corporate strategist, and Beth Aleman, its

director of human resources, also supervised the performance of certain duties assigned to Donaldson. Id. ¶¶ 35–36.

In May of 2014, Donaldson was diagnosed with "inoperable Adenocarcinoma pancreatic cancer (Stage IV)." Id. ¶ 37. Of the two primary types of pancreatic cancer, Adenocarcinoma is "the deadlier and more common." Id. ¶ 38. "In 2014, 75% of individuals with Adenocarcinoma pancreatic cancer died within one year of diagnosis, with only 6% having a 5-year life expectancy survival rate." Id. ¶ 39.

Upon learning of the diagnosis, Donaldson's supervisors expressed concern about his ability to work. For instance, LaRocco told Donaldson that his aunt had died from pancreatic cancer, and he inquired as to whether Donaldson would want to work part-time as a result of the diagnosis. Id. ¶¶ 51–52. On another occasion, Whyrick asked Donaldson if his particular type of cancer was "slow or aggressive." Id. ¶ 55.

On May 19, 2014, Donaldson met with an oncologist. Id. ¶ 42. During the appointment, Donaldson's temperature was elevated. Id. ¶ 43. Consequently, Donaldson was hospitalized for a few days. Id. On the day that he was discharged from the hospital, Whyrick informed Donaldson by telephone that the defendants had "hired a temporary accountant to assist [him] while he was sick, since [Donaldson] was the only accountant in the Trae-Fuels office." Id. ¶ 44.

Immediately thereafter, Donaldson left on a pre-planned trip to Utah to adopt a newborn child. Id. ¶ 45. Upon returning to work on May 27, 2014, Donaldson began to train the temporary accountant at Whyrick's direction. Id. ¶ 46. However, because the plaintiff was "functioning well," the defendants decided to release the temporary accountant shortly thereafter. Id. ¶ 47. Aleman acknowledged that the hiring of the temporary accountant was "premature," since Donaldson "had continued to perform his duties well despite his health issues." Id. ¶ 49.

2

Prior to his cancer diagnosis, Donaldson never received any negative feedback or reviews regarding his job performance. Id. ¶ 59. However, within a few weeks of being informed of the diagnosis, Aleman and LaRocco met with Donaldson and critically questioned his decision to leave his company cell phone at the office while he was in Utah. Id. ¶¶ 60–63. At the beginning of the meeting, Aleman indicated that she was "'documenting'" their conversation. Id. ¶ 62. Donaldson advised Aleman and LaRocco that the phone was not working properly and that he had left it with the office administrator to be repaired while he was gone. Id. ¶¶ 64–65. Donaldson "also explained that his supervisors and colleagues knew he was available on his personal phone and that his home, company cell, and personal cell phone numbers were listed on the company contact list available to all employees." Id. ¶ 66. "In fact, Plaintiff's supervisors had called him on his personal cell phone many times before this incident." Id. ¶ 67.

In late June or early July 2014, Donaldson advised the defendants that he would be undergoing chemotherapy at Johns Hopkins in Baltimore, Maryland. Id. ¶ 76. Donaldson provided a copy of his chemotherapy schedule to Frink, Whyrick, and Trae-Fuel's office manager. Id. ¶ 78. The schedule consisted of chemotherapy on "two out of every three Fridays." Id. ¶ 77. Donaldson advised Frink that he intended to maintain a full, forty-hour workweek while undergoing treatment. Id. ¶ 79. Frink subsequently informed Donaldson that the defendants had "agreed to this plan." Id. ¶ 80.

Donaldson started chemotherapy on July 3, 2014. Id. ¶ 76. He handled the treatment "extremely well" and "experienced no negative symptoms." Id. ¶ 82. As a result, he "was able to maintain a forty to forty-five-hour work week, even on weeks that he underwent chemotherapy." Id.

Nonetheless, on August 20, 2014, less than two months after he began chemotherapy, Frink and Aleman informed Donaldson that he was being terminated and should not return to

3

work. Id. ¶ 83. "Aleman provided no explanation for the firing, but began the conversation by saying 'We are not letting you go because you are sick.'" Id.¶ 84. When Donaldson inquired as to the reason for his termination, "Aleman said only 'I think you know what it is'" and did not respond any further. Id.¶ 86. Prior to his termination, none of Donaldson's supervisors voiced any concerns regarding his job performance. Id. ¶¶ 88–90.

## Procedural History

After exhausting his administrative remedies, Donaldson filed the instant action against Trae-Fuels and EnviroTech for alleged violations of the ADA. In Count I of the complaint, Donaldson claims that, by terminating him, the defendants "denied [his] request for reasonable accommodations and refused to engage in an interactive process to identify reasonable accommodations." Id. ¶ 104. In Count II, Donaldson claims that the defendants terminated his employment "because of his disability" and because they "regarded [him] as disabled." Id. ¶ 113.

The defendants have moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The defendants' motion has been fully briefed and argued and is now ripe for disposition.

## Standard of Review

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson, 551 U.S. at 94. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Such unlawful discrimination can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" Wilson v. Dollar Gen. Corp., 717 F.3d 337, 344 (4th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). In this case, the plaintiff claims that the defendants terminated his employment and failed to accommodate his disability in violation of the ADA.

In moving to dismiss the complaint, the defendants argue that Donaldson's allegations are insufficient to establish that he was disabled within the meaning of the ADA and that both claims are subject dismissal on that ground. The defendants also argue that Donaldson has failed to plausibly allege that they refused to provide an accommodation. For the following reasons, the court finds both arguments unpersuasive.

### I. Disability Within the Meaning of the ADA

Under the ADA, "[t]he term 'disability' means with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The term "major life activities" is defined to include, among others, "concentrating, thinking, communicating, and working," as well as "the operation

of a major bodily function," including the "functions of the immune system, normal cell growth, [and] digestive ... functions." Id. § 12102(2).

In 2008, Congress enacted the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, which "broadened the definition of 'disability.'" Summers v. Altarum Inst., Corp., 740 F.3d 325, 329 (4th Cir. 2014). The principal purpose of the ADAAA was "to make it 'easier for people with disabilities to obtain protection under the ADA.'" Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015) (quoting 29 C.F.R. § 1630.1(c)(4)). Its implementing regulations clarify that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of a disability." 29 C.F.R. § 1630.1(c)(4). Accordingly, "'[t]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.'" Jacobs, 780 F.3d at 572 (quoting Pub. L. No. 110-325, § 2(b)(5) (2008)).

In this case, Donaldson claims that he was actually disabled at all times relevant to this action, since his "pancreatic cancer was a physical limitation that substantially limited his major bodily functions regarding his normal cell growth and his digestive functions." Compl. ¶ 40. Donaldson alternatively asserts that the defendants perceived or regarded him as disabled as a result of his cancer diagnosis. Id. ¶¶ 41, 131.

Although certain allegations regarding the limiting effects of the plaintiff's pancreatic cancer are arguably conclusory, the court is of the opinion that this impairment, as described in the complaint, plausibly qualifies as a disability under the ADA. This conclusion is consistent with the regulations implementing the ADAAA, which recognize that cancer will qualify as a disabling impairment "in virtually all cases," since "cancer substantially limits normal cell growth." 29 C.F.R. § 1630.2(j)(3); see also Alston v. Park Pleasant, Inc., 679 F. App'x 169, 172 (3d Cir. 2017)

(agreeing that "cancer can—and generally will—be a qualifying disability under the ADA"); Oehmke v. Medtronic, Inc., 844 F.3d 748, 756 (8th Cir. 2016) (holding that the plaintiff's "cancer, even while in remission, is clearly a covered disability under the ADA"); Katz v. Adecco USA, Inc., 845 F. Supp. 539, 548 (S.D.N.Y. 2012) (observing that "[c]ancer will virtually always be a qualifying disability") (internal quotation marks omitted). Although an "individualized assessment" is nonetheless necessary in determining whether an impairment substantially limits a major life activity or bodily function, 29 C.F.R. § 1630.2(j)(1)(iv), Donaldson specifically alleges that he was diagnosed with the deadliest form of pancreatic cancer, that it "substantially limited . . . his normal cell growth and his digestive functions," and that he was required to undergo chemotherapy treatment. Compl. ¶¶ 38, 40, 76. Accordingly, at this stage of the proceedings, the court concludes that the plaintiff has plausibly alleged that he was actually disabled within the meaning of 42 U.S.C. § 12102(1)(A). See Jeffries v. Wal-Mart Stores East, LP, 8:15-cv-00473, 2016 U.S. Dist. LEXIS 95051, at *8 (D. Md. July 11, 2016) (holding that the plaintiff's breast cancer qualified as a disability under the ADA where the plaintiff alleged that it weakened her immune system); see also c.f. Alston, 679 F. App'x at 172 (emphasizing, in affirming the grant of summary judgment to the plaintiff's employer, that the plaintiff "never claimed at any stage of the litigation that her [cancer] limited any substantial life activity, including immune system function or normal cell growth").

Donaldson also claims that the defendants regarded him as having a disability. Under the ADA, as amended, "[a]n individual meets the requirements of 'being regarded as having [a disabling] impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12012(3)(A). Thus, the question of whether a plaintiff is regarded as disabled "turns on the

7

employer's perception of the employee." Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997). Under the amended definition, "a plaintiff bringing a 'regarded as' claim under the ADA needs to plead and prove only that [he] was regarded as having a physical or mental impairment." Mercado v. Puerto Rico, 814 F.3d 581, 588 (1st Cir. 2016). "Such a plaintiff no longer needs to plead and prove that such impairment substantially limited one or more major life activities." Id. (citations omitted); see also Nunies v. HIE Holdings, Inc., 908 F.3d 428 (9th Cir. 2018) ("Based on the plain language of the ADAAA, it was error for the district court to require [the plaintiff] to present evidence that [the defendant] believed that [the plaintiff] was substantially limited in a major life activity.").

Viewing the factual allegations in the light most favorable to Donaldson, the court concludes that the complaint plausibly alleges that the defendants terminated his employment because of his cancer diagnosis. The complaint indicates that, prior to his diagnosis, the plaintiff never received any negative feedback, reviews, or complaints about his work from Frink, Whyrick, or anyone else at Trae-Fuels or EnviroTech. However, upon learning that he had been diagnosed with pancreatic cancer, Aleman and LaRocco criticized him for leaving his company cell phone at the office, and Aleman noted that she was documenting their conversation with the plaintiff. Additionally, Donaldson's supervisors expressed concern about the plaintiff's ability to work and hired a temporary accountant to assist him "while he was sick." Compl. ¶ 44. Less than two months after Donaldson began chemotherapy, the defendants terminated his employment, even though he maintained a full-time work schedule while undergoing treatment. At the time of his termination, Donaldson was once again referred to as being "sick." Id. ¶ 84 (internal quotation marks omitted). Although Aleman told Donaldson that the status of his health was not the reason for his termination, the facts alleged in the complaint, when viewed in Donaldson's favor, support a contrary inference at the pleading stage.

For all of these reasons, the court concludes that Donaldson has adequately alleged that he was both actually disabled and regarded as disabled by the defendants. Consequently, the court must reject the defendants' argument that "Donaldson was not impaired or disabled in any way." Defs.' Br. Supp. Mot. Dismiss 7, Dkt. No. 13.

## II. <u>Failure to Accommodate</u>

The defendants also seek dismissal of Count I on the basis that they "granted, not refused, Mr. Donaldson's requested accommodations for medical treatment." Id. at 5. For the following reasons, the court finds this argument unpersuasive.

As indicated above, unlawful discrimination under the ADA "can include the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." Wilson, 717 F.3d at 345 (internal quotation marks omitted). For purposes of the ADA, "reasonable accommodations" may include "job restructuring" or "modified work schedules." 42 U.S.C. § 12111(9)(B). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8).

In moving to dismiss Count I, the defendants argue that the only accommodation requested by Donaldson was that he be allowed to undergo chemotherapy two out of every three Fridays, and that the complaint expressly states that "EnviroTech and Trae-Fuels agreed to this plan." Compl. ¶ 80. The problem with this argument is that the complaint goes on to allege that Donaldson was terminated less than two months after he began undergoing chemotherapy. See id. ¶ 83. Courts have recognized that employers cannot "escape liability for failure to provide reasonable accommodation by terminating employment." Roberts v. Progressive Independence, Inc., 183 F.3d 1215, 1220 (10th Cir. 1999). Because Donaldson plausibly alleges that the defendants "terminated [his] employment rather than retain him as an employee and provide [the requested

9

accommodation]," the court concludes that the complaint states a claim for "both a failure to accommodate and wrongful termination." E.E.O.C. v. Orion Energy Sys., No. 1:14-cv-00619, 2015 U.S. Dist. LEXIS 86428, at *10 (E.D. Wis. July 2, 2015); see also Burch v. Coca-Cola Co., 119 F.3d 305, 314 (5th Cir. 1997) (explaining that a "wrongful termination claim under the ADA is not properly analyzed under a reasonable accommodation theory unless an employer is shown to have terminated a qualified individual with a disability in order to avoid accommodating that employee's impairments at the workplace"); Anderson v. Roche Carolina, Inc., 4:10-cv-02792, 2012 U.S. Dist. LEXIS 13118, at *30 (D.S.C. Feb. 3, 2012) (denying summary judgment on a claim of failure to accommodate where the evidence supported a finding that the defendant terminated the plaintiff's employment instead of accommodating her disability).

## Conclusion

For the reasons stated, the court will deny the defendants' motion to dismiss. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 21st day of May, 2019.

_____
Senior United States District Judge