IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MICHAEL DONALDSON, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No.: 3:18CV00097 |
| TRAE FUELS, LLC., et al. | ) ) ) |
| Defendants. | ) ) ) |

**DECLARATION OF AMY ELIZABETH ALEMAN**

I, Amy Elizabeth (Beth) Aleman, am over the age of 18 and make this declaration on personal knowledge.

1. I was the Human Resources Manager at EnviroTech Services, Inc. during the time that Michael Donaldson was controller of Trae Fuels – October 2013 to August 2014.

2. In my role as Human Resources Manager, I supervised Mr. Donaldson and directed his job activities in the area of Human Resources at Trae Fuels.

3. I participated in hiring Mr. Donaldson in October 2013. He told me during the interview process that he had extensive accounting experience and human resource training and I was optimistic that he would be a productive employee for Trae Fuels.

4. Shortly after he began work for Trae Fuels I noticed that Mr. Donaldson was very disorganized and did a poor job of following company procedures particularly with respect to obtaining required documentation from new employees at Trae Fuels.

5. I sent Mr. Donaldson multiple emails and corrected him verbally on this topic throughout the entire duration of his employment, but his performance in this area never improved.

6. Federal law requires that Trae Fuels have a valid I-9 Employment Eligibility Verification form for each employee within three days of the start of their employment. On multiple occasions throughout his employment, Mr. Donaldson failed to obtain an I-9 and other employment forms for new workers within the required time frame. This repeatedly placed the company in violation of federal law.

7. As an example of the failure of Mr. Donaldson to provide the proper documentation for new employees in a timely fashion, I have attached a series of emails from January 31, 2014 in which I informed Mr. Donaldson that certain new-employee paperwork had not been received. Exhibit 1. Mr. Donaldson refused to take responsibility for his failure to obtain the paperwork and send it to me in a timely fashion.

8. On February 24, 2014 Mr. Donaldson failed to obtain another employee's (Josh) health insurance forms before starting work at Trae Fuels. I made clear to Mr. Donaldson again that it was his responsibility to enforce compliance with this rule. He wrote me back a long excuse about why he could not enforce the company policy. Exhibit 2. I found his excuse to be unacceptable and frankly was shocked that he was so stubbornly unwilling to follow my directions to be more forceful with employees in obtaining required documents before they started work.

9. I also became aware from EnviroTech's CFO Kevin Whyrick that the financial reports that Mr. Donaldson prepared were incomplete and inadequate. Mr. Whyrick asked me to travel from EnviroTech's Colorado headquarters to Trae Fuels in Virginia to participate in a face to face employee counseling session with Mr. Donaldson on June 4, 2014.

10. That counseling session was held at Trae Fuels location in Bumpass, Virginia.  At the conclusion of the session with Mr. Donaldson he was placed on a two-week performance improvement plan.  The written record of the counseling session is attached to this affidavit as Exhibit 3.  The Employee Counseling Notice is a true and accurate summary of the topics discussed at the meeting and I signed my name at the bottom left of the document.

11. In the weeks after the June 4, 2014 counseling session, Mr. Donaldson's job performance did not improve.  He simply failed to take direction from his superiors and instead of learning from constructive criticism of his work he took each correction as a personal attack.  He frequently shifted the blame for his work performance deficiencies to other employees.

12. On June 26, 2014, Chris LaRocca emailed me a summary of his observations regarding Mr. Donaldson's work after the June 4 counseling session. Exhibit 4.  I placed this written summary in Mr. Donaldson's employee file.

13. On July 17, 2014, I met with Kevin Whyrick and Chris LaRocca to discuss Michael Donaldson's progress.  We determined that he had not improved since the June 4 counseling session and we agreed that Chris LaRocca would follow up with Michael the following week to discuss his lack of accountability and lack of execution.  We specifically noted his "lack of involvement in financial accountability to investors" in our meeting.  My meeting notes from July 17, 2014 at attached as Exhibit 5.

14. At the end of July 2014, Mr. Donaldson again failed to provide me with completed health insurance documents for the new employees who started work during July.  On August 4,

2014, I wrote an email to Michael and let him know, again, that he had missed the deadline and that new employees would not be insured during the month. Exhibit 6

15. In early August, Kevin Whyrick told me that Mr. Donaldson should be terminated from his position at Trae Fuels due to his failure to improve the quality of his work and his overall job performance. I agreed with this decision.

16. On August 20, 2014, I travelled to Trae Fuels from Greely, Colorado and met in person with Mr. Donaldson and John Frink, Trae Fuels General Manager. We told Mr. Donaldson that his employment was terminated. He stated words to the effect of "you can't fire me….I am old and I am sick." I responded that his termination was based only on his poor work performance.

17. After Mr. Donaldson left the office on August 20, I reviewed his office files and found them to be in complete disarray. Many employee files were missing important documents and random vendor invoices were tucked into employee files for no apparent reason. There were multiple Visa bills that were unopened, and we found later that he was past due on a lot of our payables that he was responsible for. He had kept telling us that he didn't need an accounting clerk to stay caught up and wanted us to stop using them. Afterwards we found that he was using them for very little and was not getting them to help him, as he was falling behind.

18. I learned later that Mr. Donaldson told others at Trae Fuels and EnviroTech that he was being treated for cancer beginning in May 2014. I do recall that he told me this. He never told me that his work performance was affected in any way by his health condition or his treatment. In fact, he never would acknowledge that his work performance was substandard even throughout the counseling session on June 4, 2014.

19. At no time did Mr. Donaldson ever tell me that he needed any special accommodations in order to perform his work.

20. My evaluation of Mr. Donaldson's job performance, and my participation in terminating his employment, was not affected or motivated in any way whatsoever by his health condition or medical treatment.

21. I am familiar with the health insurance coverage provided by Cigna Insurance to Trae Fuels and EnviroTech employees during 2013-2014. Insurance premiums were not affected by the health condition or medical treatment provided to a single employee. The Company health insurance premiums were not affected by Mr. Donaldson's medical treatment.

22. Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Date: 10-25-19

Amy Elizabeth Aleman