IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| MICHAEL DONALDSON,<br><br>  Plaintiff,<br><br>  v.<br><br>TRAE FUELS, LLC., et al.<br><br>  Defendants. | Case No.: 3:18CV00097 |

## DECLARATION OF MICHELLE MILLS

I, Michelle Mills, am over the age of 18 and make this declaration on personal knowledge.

1. I am Corporate Controller at EnviroTech Services, Inc. and held that position during the entire time that Michael Donaldson was controller of Trae Fuels – October 2013 to August 2014.

2. In my role as Corporate Controller, I exercised EnviroTech corporate oversight over Trae Fuels' financial operations. My role was to oversee or check the transactions on a high level that were in the system for Trae Fuels. I communicated with Michael Donaldson frequently and I made suggestions on how to improve processes or make recommendations on things that seemed like he was doing incorrectly according to our current

processes. I looked at all transactions in the system and that included what he did and what others did in the IFS system.

3. Not long after Michael was hired and trained on our accounting systems I began to have concerns about his performance. As early as January 2014 I concluded that he was not performing the job as the Controller of a company and was not able to think proactively and figure the system out. He was trained several times and continued to make the same errors or create more work than was necessary. He asked the same questions over and over and always blamed someone else and did not take responsibility for his actions.

4. Michael has his own way of thinking and doing things and when he asks for a suggestion and is given a response, he comes back with a reason why he thinks he needs to do the task his way.

5. A specific example of this was his habit of doing journal entries for Accounts Payable (AP) invoices. He would receive an AP invoice but instead of entering the amount in the company IFS financial system he would create a separate journal entry in an excel spreadsheet and reclassify that invoice after it was paid some time later. His insistence on doing it his way was grossly inefficient and resulted in a number of extra steps that were unnecessary. I talked to him numerous times about this procedure and told him in an email dated April 14, 2014 that he should not be handling AP invoices in this way. Exhibit 8. However, he continued to do so.

6. In the email exchange in Exhibit 8, Michael sent his accounting entries to Kevin Whyrick and me to check prior to closing the month because we had found so many errors in prior months that we changed the process so we could look at his items prior to him posting them to the general ledger.

7. In mid-July 2014, Michael was still making very fundamental and basic accounting errors. I have attached an email exchange from July 16, 2014 which demonstrates that Michael was unable to account for a shop order that was in progress but not completed (WIP, or work in progress). Exhibit 9. Despite receiving specific instructions on how to account for the shop order, he was unable to make the necessary corrections to ensure the accuracy of the financial statements.

8. In July 2014, I prepared a report for Michael Donaldson's employee file. Exhibit 10. I listed the items where he just was not doing his job. In most of these areas I had given him specific instructions, either verbally or in email, about how to do the job, but he still was not able to improve his performance.

9. The reason he was let go was based on his performance and the fact that he was not performing at the level that we expected when we hired him. In the hiring interview, he said he had experience doing all the things he would be required to do at Trae Fuels, but it was evident very quickly that he was over his head and was struggling to perform the job we hired him to do.

10. I did become aware of his cancer diagnosis and treatment in May 2014. He did not ask for any accommodations in the workplace other than the ability to

take some Fridays off for chemotherapy treatment. Everyone at Trae Fuels and EnviroTech agreed to his schedule for treatment.

11. Michael never excused or blamed his work performance on his health condition or his treatment. Instead, he never acknowledged that there was anything wrong with his work performance despite the many times I had to correct his work.

12. His cancer diagnosis and treatment had no effect on my interaction or evaluation of Michael's work. I based my comments and corrections of his work solely on the merits of his work. My assessment that he was unable to do the job of controller of Trae Fuels was based on my personal observations that he could not perform the essential functions of that job.

13. Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Date: 10-29-19

Michelle Mills