IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MICHAEL DONALDSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 3:18CV00097 |
| TRAE FUELS, LLC., et al. | ) |
| Defendants. | ) |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| MICHAEL DONALDSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRAE FUELS, LLC., et al. ) <br> ) <br> Defendants. ) | Case No.: 3:18CV00097 |

### DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S INTERROGATORIES

Defendants TRAE-Fuels, LLC ("TRAE") and EnviroTech Services, Inc. ("ESI") hereby sets forth their objections and responses to Plaintiff's first set of interrogatories.

### GENERAL OBJECTIONS

Defendants hereby interpose the following general objections to the interrogatories served by Plaintiff.

A. Defendants object to any instruction, definition, or interrogatory that attempts to impose a duty above and beyond the obligations set forth in Fed. R. Civ. P. 26 and 33.

B. Defendants object to any instruction, definition, or interrogatory that seeks information protected by the attorney-client privilege, work product protection, or other applicable privilege.

C. Defendants reserve the right to supplement and/or modify these responses to the extent that further information is discovered at any time prior to trial in this matter.

Page 1 of 11

3. Identify each person who contributed the facts set forth in your Position Statement to the EEOC in response to Plaintiffs EEOC charge and any other of your employees you spoke with in gathering the factual information you included in the Position Statement to the EEOC.

**Response:** See Responses to Nos. 2.

4. Identify and describe each act you took to investigate Plaintiffs allegation(s) related to disability discrimination and identify each individual you contacted and describe the information each individual provided.

**Response:** Defendants object to this interrogatory on the grounds that it seeks information protected by the work product protection.

5. Describe the complete factual basis for your contentions in your Position Statement to the EEOC that Plaintiff engaged in poor performance, including that he failed to appropriately use the IFS system; had mismanaged his HR file responsibilities; failed to produce accurate financial statements; failed to timely enter production logs; and that Plaintiffs mismanagement of the IFS system caused Plaintiff to draw on Trae-Fuels' line of credit to pay operating expenses.

**Response:** Mr. Donaldson's difficulty with meeting the expectations of his position became apparent early in his tenure and required numerous corrections by his co-workers and supervisors. In May 2014, more than six months after he was hired and initially trained, Mr. Donaldson was still unable to understand and correctly use the company's IFS / accounting software applications, which are crucial to the company's operational success and a core function

Page 4 of 11

of his position as Controller. Due to Mr. Donaldson's continued inability to monitor and account for critical business functions using IFS, he was informed that he would be required to undergo re-training on the company's IFS system. This occurred, at company expense, on May 14-15, 2014.

A short time later, based on his mismanagement of IFS, Mr. Donaldson was forced to draw on TRAE's line of credit to pay for the company's general operating costs which meant that the company had gone cash negative. This emergency event was undetected by Mr. Donaldson until the last moment due to his lack of understanding and implementation of the IFS system tools and applications.

On June 4, 2014, after the cash negative incident and after failing at numerous other duties, John Frink (TRAE's General Manager), Chris LaRocco (Corporate Strategist for parent company, ESI), and Beth Aleman (ESI's Human Resources Manager) met with Mr. Donaldson to discuss performance expectations for his position. Mr. Donaldson was provided with a detailed critique of how he had failed to meet the expectations and responsibilities of his job. One such failure was his inability to manage HR employee file responsibilities. Those responsibilities had to be transferred to another employee, Fran Holliday, because Mr. Donaldson proved incapable of such management. Mr. Donaldson was told at the meeting that "he needs to produce more qualitative/quantitative work and be a hands on controller." A copy of the Employee Counseling Notice from Mr. Donaldson's file documenting this meeting will be produced. In addition, there are numerous emails in which Mr. Donaldson's errors and oversights were called to his attention by Michelle Mills and his supervisors and co-workers. These emails will be produced.

The lack of accuracy in the financial reports and cash flow statements prepared by Mr. Donaldson required Kevin Whyrick (ESI's Vice President - Finance) and Mr. LaRocco to convene a weekly conference call with Mr. Donaldson. Ultimately, ESI employees were forced to simply create the cash flow reports themselves because Mr. Donaldson was unable to do so.

Despite the counseling session on June 4, on June 6 Mr. Donaldson failed to timely enter the production logs into IFS from May 24 which were due that day. On June 9 he turned in substandard and unpresentable work on a cash flow analysis requested by Mr. LaRocco. On June 17 Mr. Donaldson turned in another cash flow analysis that was unacceptable because it was missing pertinent data. On June 18 Mr. Donaldson's supervisors were informed that Mr. Donaldson still had not implemented the IFS accounting system as he was told to at his re-training a month earlier. Many of these issues are documented by Mr. LaRocco in a memo written on June 26, 2014, and this memo will be produced.

TRAE had provided Mr. Donaldson with a temporary accountant assistant upon learning of his cancer diagnosis to assist with his work. It was Mr. Donaldson, however, who dismissed the temporary worker, telling the company that he was not in any need of assistance.

Throughout the rest of June and July 2014 Mr. Donaldson continued to require numerous corrections to his work. On August 4, he failed to arrange for new employees to be signed up for health, vision, and dental insurance despite a written reminder from Ms. Aleman on July 28. Thus, despite TRAE's best efforts to re-train him, Mr. Donaldson continued to underperform the expectations for his position. His inability to perform his job was the sole reason for his dismissal on August 20, 2014.

During on HR audit conducted at TRAE on June 3, 2014, Ms. Aleman learned that Mr. Donaldson had impermissibly placed accounts payable items and un-opened Visa bills in

Page 6 of 11

random employee files. Ms. Aleman also learned that Mr. Donaldson's own personnel file was missing the executed confidentiality agreement he signed when he began his employment. Ms. Aleman provided Mr. Donaldson with a replacement confidentiality agreement which he signed. A copy of the document will be produced.

Further detailed information in response to this interrogatory are contained within the documents produced in response to Plaintiff's request for production of documents.

6. Identify the essential functions, responsibilities, and/or duties of the controller position, including without limitation the controller's human resource duties, as well as any changes in those functions and the basis for each such change from January 1, 2014 until December 31, 2015.

**Response:** The Company Controller is responsible for the preparation and oversight of the financial records for the Company, manufacturing costing, inventory management, day to day accounting, oversight of some administrative employees, and is further responsible for the strategic direction of the Company. The Controller is responsible for reporting to the management team with TRAE, as well as with the management team within the parent company, ESI.

7. Describe any instances of Plaintiffs alleged deficient performance that occurred before you learned of Plaintiffs cancer diagnosis and your response to each such instance, including your efforts to inform Plaintiff of such alleged deficiencies.

**Response:** See Response to No. 5.

Page 7 of 11

8. Describe the complete factual basis for your determination that Plaintiff's alleged mismanagement of IFS caused TRAE to need to draw on TRAE's line of credit to pay for the company's general operating costs.

**Response:** See Response to No. 5. See documents produced in response to Plaintiff's requests for production.

9. Identify each time Plaintiff's co-workers communicated to you that they had been forced to correct his work.

**Response:** See Response to No. 5. See documents produced in response to Plaintiff's requests for production.

10. Describe the establishment of the temporary assistant accountant position, including without limitation the reasons the position was established, the duties and responsibilities you intended for the position, and the reasons the position was eliminated.

**Response:** See Response to No. 5. See documents produced in response to Plaintiff's requests for production.

11. Describe all policies, practices and procedures Defendants use to address deficient work performance and employee discipline and identify all documents related to such policies, practices, or procedures.

**Response:** The practice of addressing deficient work performance and employee discipline is handled on a case-by-case basis and there are no documents describing a standard policy, practice, or procedure that must be followed.

Dated: May 17, 2019.

As to Responses:

[signature]

                              As to Objections,

                              /s/ *Jackson S. Nichols*
                              _____
                              Jackson S. Nichols, Esq. (VSB # 87225)
                              Cohen Seglias Greenhall Pallas & Furman PC
                              1828 L. Street, N.W., Suite 705
                              Washington, D.C. 20036
                              (202) 466-4110
                              JNichols@CohenSeglias.com

                                  --and—

                              /s/ *Lars H. Liebeler*
                              _____
                              Lars H. Liebeler, Esq.
                              *(admitted pro hac vice)*
                              Lars Liebeler PC
                              1828 L. Street, N.W., Suite 705
                              Washington, D.C. 20036
                              (202) 774-1510
                              LLiebeler@LHL-LawFirm.com

## CERTIFICATE OF SERVICE

This is to certify that I have on May ___, 2019 served all the parties in this case with this **Defendant's Objections and Responses to Plaintiff's Interrogatories** by electronic mail.

/s/ *Lars H. Liebeler*

_____
Lars H. Liebeler, Esq.

Page 11 of 11