## CIVIL JURY TRIAL FINAL INSTRUCTIONS

### Judge Glen E. Conrad

Ladies and gentlemen of the jury, now that you have heard the evidence and the parties' arguments, it becomes my duty to give you the instructions as to the law applicable to this case. It is your duty as jurors to follow the law as stated in the instructions that I will give you and to apply the rules of law so given to the facts as you find them from the evidence in the case. You are not to single out one instruction alone as stating the law but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by the court. Regardless of any opinion you may have as to what the law should be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the court. Similarly, it would be a violation of your sworn duty to base a verdict upon anything but the evidence in the case.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case or what that opinion might be. It is not my function to determine the facts. Instead, you are the sole judges of fact in the case.

1

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors and to arrive at a verdict by applying the same rules of law, as given in the instructions of the court.

You must perform your function without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. The parties, the public, and the court expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the court, and reach a just verdict regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. In this case, the defendants are corporate entities. I tell you that corporate entities are entitled to the same fair consideration that you would give any individual person. Again, all parties stand equal before the law and are to be dealt with as equals in a court of justice.

As I mentioned at the outset, you must determine all relevant facts by a preponderance of the evidence. By this is meant the greater weight and degree of evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a fact is more likely so than not so. The testimony of one witness whom you believe can constitute the greater weight of the evidence.

In determining whether any fact has been proven by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." As you will recall from the opening instructions, that is a higher standard of proof that applies in criminal cases. It does not apply in civil cases such as this. You should therefore put it out of your mind.

The evidence in the case before you has consisted in part of testimony from witnesses. You may believe all of what a witness said, or only part of it, or none of it. You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testified, or by the character of the testimony given, or by evidence contrary to the testimony.

In deciding whether to believe a witness, you should carefully examine all the testimony given, the circumstances under which each witness testified, and every matter in evidence that tends to show whether a witness is worthy of belief. You may consider each witness' intelligence, motive, state of mind, demeanor, and manner while testifying. You may consider the witness' ability to observe the matters as to which he or she has testified and whether the witness impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if any at all, each witness' testimony is either supported or contradicted by other evidence in the case.

4

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

If you believe that any witness has been so impeached and thus discredited, you may give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you may choose to distrust such witness's other testimony, and you may reject all the testimony of that witness, or give it such weight as you may think it deserves.

An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

You are not bound to decide any issue of fact in accordance with the testimony of a number of witnesses which does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence which does produce such belief in your minds.  The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence; but which witness, and which evidence, appeals to your minds as being the most accurate, and otherwise trustworthy.  The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

7

During the trial of this case, certain testimony was presented to you by way of telephone.  I tell you that such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed by you, in the same way as if the witness had been present here in court and had testified in person.

In addition to the testimony of the witnesses, the evidence in the case consists of any and all exhibits which have been received into evidence and all facts which have been either admitted or stipulated.

A stipulation is an agreement between both sides that certain facts are true. You must treat such facts as having been proved for the purpose of this case.

You have heard and seen evidence in this case which is in the form of interrogatories.  Interrogatories are written questions posed by one side which call for written answers under oath from the other side. Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

I also tell you, however, that while you may consider the interrogatory answers as evidence against the party who gave the answers, you may not consider the answers against any other party, nor may you consider the answers as evidence against the party who posed the interrogatory questions. You may only consider the interrogatory answer as evidence against the party who gave the answer.

I tell you that evidence may be direct or circumstantial.   Direct evidence is testimony by a witness about what that witness personally saw or heard or did.   Circumstantial evidence is indirect evidence.   That is, it is proof of one or more facts from which one can find another fact.   You are to consider both direct and circumstantial evidence.   The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

Any fact that may be proved by direct evidence may be proved by circumstantial evidence; that is, you may draw all reasonable and legitimate inferences and deductions from the evidence.

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist. There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defendants ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense. So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

12

As I told you when the trial began, certain things are not evidence, and I want to list those things for you again.  First, statements, arguments, questions, and comments by the attorneys do not constitute evidence.

Second, objections are not evidence.  The parties have a right to object if they believe something is improper.  You should not be influenced by an objection.  If I sustain an objection to a question, you must ignore the question and must not attempt to guess what the answer might have been.

Third, testimony that I struck from the record or told you to disregard is not evidence and must not be considered.

Fourth, anything you saw or heard about this case outside of the courtroom is not evidence.

Finally, things I may have said or done, or rulings I may have made, are not evidence.  I tell you that answers to questions I may have asked should be treated just as answers to any other questions posed.  In other words, answers to questions I may have asked should not be taken as having any special meaning or as any indication that I have any particular views about the case.

At this time, I am going to ask the marshal to give each of you a copy of the verdict form which will be provided to you when you are sent out to deliberate.  I want to make reference to the form as I instruct you as to the law which governs the particular case before us today.

Your verdict must be based on the facts as you find them and on the law contained in all of these instructions.

14

The plaintiff in this case is Michael Donaldson.  The defendants are Trae-Fuels, LLC and EnviroTech Services, Inc.

As you will recall from the opening instructions, Mr. Donaldson asserts a claim of disability discrimination under a federal law known as the Americans with Disabilities Act, which will be referred to in these instructions as the "ADA."   The ADA prohibits employers from discriminating against a qualified individual on the basis of disability. Terms such as "disability" and "qualified individual" are defined by the ADA, and I will instruct you on the meaning of those terms.

Mr. Donaldson's claim under the ADA is that he was disabled as a result of pancreatic cancer, and that the defendants terminated his employment on the basis of such disability.

The defendants deny Mr. Donaldson's claim and assert that he was terminated for legitimate, non-discriminatory business reasons.

Mr. Donaldson has the burden of proving his claim against the defendants by a preponderance of the evidence.

15

To prevail on his claim of discrimination in violation of the ADA, the plaintiff must prove each of the following elements by a preponderance of the evidence:

First:          That the plaintiff had a "disability" within the meaning of the ADA;

Second:     That the plaintiff was a "qualified individual"; and

Third:         That the defendants discriminated against him because of his disability.


If you find that the plaintiff has proven all three of these elements by a preponderance of the evidence, then you will answer "yes" to the question on the verdict form, and your verdict will be for the plaintiff.  If you find that the plaintiff has failed to prove any one of these elements by a preponderance of the evidence, then you will answer "no" to the question on the verdict form, and your verdict will be for the defendants.

To satisfy the first element of his claim, the plaintiff must prove by a preponderance of the evidence that he had a disability within the meaning of the ADA.

A "disability" is defined to include a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities.  I will now further define these terms for you.

In order to prove that he had a disability under this definition, the plaintiff must first prove by a preponderance of the evidence that he had a physical or mental impairment.

An impairment is defined as:

(1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, urinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as an intellectual disability, organic brain syndrome, emotional or mental illness, or specific learning disability.

If you find that the plaintiff had an impairment, then you must determine whether that impairment substantially limited one or more major life activities.

"Major life activities" are activities that are of central importance to everyday life, including the operation of a major bodily function.

"Major life activities" include, but but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

"Major life activities" also include the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

18

Finally, to satisfy this definition of disability under the ADA, the plaintiff must prove by a preponderance of the evidence that, as a result of the impairment, his ability to perform a major life activity was substantially limited as compared to most people in the general population.

An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting, but not every impairment is considered a substantial limitation.  In determining whether an individual is substantially limited in a major life activity, you may consider facts such as the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity.

The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures, such as medication or other forms of treatment.

An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a disability.

I tell you that cancer can—and generally will—be a qualifying actual disability under the ADA, since cancer can substantially limit normal cell growth or other major bodily functions.  Nevertheless, the determination of whether an impairment substantially limits a major life activity, including the operation of a major bodily function, requires an individualized assessment.  Thus, you must decide whether the plaintiff has proven by a preponderance of the evidence that his pancreatic cancer substantially limited a major life activity.

I tell you that even if the plaintiff did not have an impairment that substantially limited a major life activity, he may still satisfy the first element of his claim if he was regarded as having such an impairment.  A plaintiff meets the requirement of being regarded as having such an impairment, if the plaintiff proves by a preponderance of the evidence that he was subjected to an action prohibited by the ADA because of an actual or perceived physical or mental impairment that was not minor and that had an actual or expected duration of more than six months.  If the plaintiff proves by a preponderance of the evidence that he was regarded by the defendants as having such an impairment, it is not necessary for the plaintiff to establish that the impairment limited or was perceived to limit a major life activity.

I tell you that the ADA's interpretative guidance provides, as an example, that if an employer terminates an employee because he has cancer, the employer has regarded the employee as an individual with a disability.

The second element of Mr. Donaldson's claim under the ADA requires that he prove by a preponderance of the evidence that he was a "qualified individual."

To satisfy this element, the plaintiff must prove two things by a preponderance of the evidence: first, that he was otherwise qualified for the position that he held; and second, that with or without reasonable accommodation, the plaintiff could perform the essential functions of that employment position.

I will now define some of these terms for you.

As I just stated, to establish that he was a qualified individual, the first thing the plaintiff must prove is that he was otherwise qualified for the position of financial controller. This means that the plaintiff had the requisite skill, experience, education, and other job-related requirements of the employment position involved in this case. If he cannot satisfy this standard, then the plaintiff was not a qualified individual, even if the reason he was not qualified was because of a disability, as, for example, where a blind person would be disqualified from driving a bus.

If you find that the plaintiff was otherwise qualified for the position, then the next step is to determine whether he has proved by a preponderance of the evidence that he was able to perform the essential functions of the employment position with or without reasonable accommodation.

In order to make this determination, you will need to determine what the essential functions of the employment position were. The "essential functions of an employment position" are the basic duties of a job that a person must be able to perform in order to hold a particular position.

A job function may be considered essential for any of several reasons.  These include, but are not limited to, the following:

1.    the reason the position exists is to perform that function;

2.    there are a limited number of employees available among whom the performance of that job function can be distributed; and

3.    the job function is highly specialized and the person in that position is hired for his expertise or ability to perform that particular job function.

In determining whether a particular job function is essential, you may consider the following factors, along with all of the evidence which has been presented to you:

a.  the employer's judgment as to which functions of the job are essential;

b.  written job descriptions prepared by the employer for advertising or posting the position;

c.  written job descriptions prepared by the employer for use in interviewing applicants for the position;

d.  the amount of time spent performing the function;

e.  the consequences of not requiring the person holding the position to perform the function;

f.  the terms of any collective bargaining agreement;

g.  the work experience of past employees who have held the position; and

h.  the work experience of current employees who hold similar positions.

25

The plaintiff, at the time of his termination, must have been able to perform all of the essential functions of the position with or without reasonable accommodation. An employer may not base an employment decision on speculation that the plaintiff's disability might worsen to the extent that the plaintiff would not be a qualified individual at some time in the future. On the other hand, an employer is not required to speculate that an employee's condition will improve if that employee is not able to fulfill all of the essential functions of the position at the time in question.

As I stated, the plaintiff must prove by a preponderance of the evidence that he was able to perform the essential functions of the employment position with or without reasonable accommodation, which may or may not have been made.

Ultimately, if you find that the plaintiff was otherwise qualified, as I explained that term to you, and you also find that the plaintiff was able to fulfill the essential functions of the position of controller with or without reasonable accommodation at the time of his termination, then he was a qualified individual.

The third element of the plaintiff's claim under the ADA requires that the plaintiff prove by a preponderance of the evidence that the defendants discriminated against the plaintiff because of his disability.

In this case, the parties have agreed that Trae-Fuels, LLC and EnviroTech Services Inc. were plaintiff's joint employer.  Thus, if you find from a preponderance of the evidence that the plaintiff was terminated because of his disability, then you must find that the plaintiff has proven this element.

To satisfy this element, the plaintiff must prove by a preponderance of the evidence that his disability was a determinative factor in the decision to terminate the plaintiff's employment.  It need not have been the sole factor, but it must have been a decisive factor, meaning that but for the consideration of the plaintiff's disability, the defendants would not have made the same employment decision.

In order for the disability to have been a determinative factor in the defendants' decision, the defendants must have known or believed that the plaintiff had a disability at the time the decision was made.  This means that the person or persons who made the decision to terminate the plaintiff must have known or believed that the plaintiff had a disability at the time of the plaintiff's termination.

An employer may not terminate an employee because of a disability, but may terminate the employee because the employee is unable to do the job, even if the reason the employee cannot do his job is because of a disability.  An employer may also terminate an employee for unacceptable behavior in the workplace, even if that behavior was a result of the employee's disability.

In this case, the defendants argue that they terminated the plaintiff, not because of any disability he may have suffered, but for non-discriminatory reasons. If you find that is true, that would be a complete defense and you must find for the defendants. But if you find that the asserted reasons for the plaintiff's termination are just a pretext or excuse, you may consider whether the real reason was discrimination on the basis of disability.

Pretext means that the reasons given by the employer are not worthy of credence or not the real reasons for the adverse employment decision.

I tell you that a plaintiff may prove that asserted justifications for an adverse employment action are pretextual in a number of ways, including by demonstrating that an employer has offered different justifications at different times for the adverse employment action, or by demonstrating that the asserted justifications, even if true, are post hoc rationalizations invented for purposes of litigation.

Remember, however, that not all pretexts are designed to conceal discrimination and that it is the plaintiff's burden to prove, by a preponderance of the evidence, that the adverse employment action would not have been taken, but for the defendants' consideration of the plaintiff's disability.

Although the plaintiff must prove that the defendants acted with the intent to discriminate on the basis of a disability, the plaintiff is not required to prove that the defendants acted with the particular intent to violate the plaintiff's federal rights under the ADA. Moreover, the plaintiff is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

You should weigh all the evidence received in the case in deciding whether the defendants intentionally discriminated against the plaintiff. However, I tell you that an employee's own subjective belief that he was the victim of disability discrimination is insufficient to prove that the employee was terminated because of his disability. Likewise, I tell you that an employee's mere disagreement with an employer regarding the quality of the employee's work is insufficient to prove that the employer's stated reasons for the employee's termination are a pretext for discrimination.

As I previously stated, the defendants have given nondiscriminatory reasons for terminating the plaintiff. If you believe the defendants' stated reasons and if you find that the termination would have occurred because of the defendants' stated reasons regardless of the plaintiff's disability, then you must find for the defendants. If you disbelieve the defendants' stated reasons for the termination decision, then you may, but need not, find that the plaintiff has proved intentional discrimination. Proof that the defendants' stated reasons for the decision are unworthy of credence, or not the real reasons, is simply one form of circumstantial evidence that is probative of intentional discrimination.

In determining whether the defendants' stated reasons for the employment decision are a pretext, or excuse, for discrimination, you may not question the defendants' business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of the defendants or believe the decision was wrong, harsh, or unreasonable. You are not to consider the defendants' wisdom. However, you may consider whether the plaintiff has proven that the defendants' stated reasons for his termination are merely a cover-up for discrimination.

Ultimately, you must decide whether the plaintiff has proven that his disability was a determinative factor in the defendants' decision to terminate the plaintiff's employment. As previously stated, "determinative factor" means that but for the plaintiff's disability, the termination would not have occurred.

If you find that Mr. Donaldson has proven all three of the required elements by a preponderance of the evidence, you will answer Question 1 on the verdict form "yes," and your verdict will be for Mr. Donaldson.  If you find that Mr. Donaldson failed to prove any one of these elements by a preponderance of the evidence, you will answer Question 1 "no," and your verdict will be for the defendants.

In just a few moments it will be time for you to retire to the jury room to begin your deliberations. You will be permitted to take all of the exhibits with you, as well as a copy of the court's written instructions.

Upon retiring to the jury room, you will select one of your number to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court. A verdict form has been prepared for your responses. You will take this form to the jury room. I tell you that in answering the question on the verdict form, it is necessary that each of you agree as to the response. Your verdict as to this question must be unanimous.

The verdict must represent the considered judgment of all of you. It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment.

You must each decide the case for yourself but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But, do not surrender your honest convictions as to the weight or effect of the evidence solely because others among you may disagree or for the mere purpose of returning a verdict. Your sole interest is to seek the truth from the evidence of the case.

Once again, when you enter your jury room, your first responsibility will be to elect a foreperson. You will then begin your deliberations. I again tell you that your answer to the question on the verdict form must be unanimous. Once you begin your deliberations, if you find it necessary to communicate with the court, let the marshal know and he will in turn let me know so we can all reconvene in open court. Once you begin your deliberations, you should not have contact with any person other than the marshal.

If you recess during your deliberations, follow all of the instructions that the court has given you about your conduct during the trial. If you want to communicate with me at any time, please give a written message or question to the marshal, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

You should not let anyone know, including the court or the marshal, how you stand on your deliberations either numerically or on the question before you, until after you have reached a unanimous verdict.

Mr. Marshal, if you will, deliver the official verdict form to the jury. Mr. Marshal, if you would please take the jury out into the hall but not all the way into the jury room and let me converse with the parties for just a few moments before we send the jury to deliberate.